134 Nev., Advance Opinion 88

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>ALEXIS PLUNKETT,<br>Respondent. | No. 74169<br><br>**FILED**<br><br>NOV 15 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order granting a motion to dismiss an indictment. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

*Reversed and remanded.*

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Christopher J. Lalli, Assistant District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Ryan J. MacDonald, Deputy District Attorney, Clark County,
for Appellant.

Las Vegas Defense Group, LLC, and Adam M. Solinger and Michael L. Becker, Las Vegas,
for Respondent.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

At issue in this appeal is whether a person who is not a prisoner can be held vicariously liable under NRS 212.165(4), which prohibits

18-904230

prisoners in jail from possessing a cellphone or other portable telecommunications device. We hold that the plain language of Nevada's aiding and abetting statute provides for broad applicability across the criminal code, including imposing criminal liability upon nonprisoners who assist prisoners in possessing cellphones in jail under NRS 212.165(4). Therefore, we reverse the district court's order granting respondent Alexis Plunkett's motion to dismiss the indictment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Plunkett is an attorney who represents a number of clients housed at the Clark County Detention Center (CCDC), a jail. A corrections officer at the CCDC informed Detective Stanton of the Las Vegas Metropolitan Police Department of suspicious activity involving Plunkett and one of her clients. In response, Detective Stanton installed a hidden camera with its audio capabilities disabled in a visiting room at the CCDC. In reviewing the video footage, Detective Stanton allegedly observed that Plunkett allowed two clients to use her cellphone on 12 separate occasions. On some occasions, he alleges, Plunkett would dial a phone number on her cellphone, appear to activate speakerphone, and move the phone toward the client so the client could speak into the phone. On other occasions, he claims, Plunkett would allow the client to touch the phone or hold it in his hands while he spoke to the caller. The State argued that these videos additionally demonstrate that Plunkett entered into an agreement with the prisoners to give them actual or constructive possession of the cellphone.

Plunkett was indicted on 2 counts of conspiracy to unlawfully possess a portable communication device by a prisoner and 12 counts of possession of a portable telecommunication device by a prisoner. These 12 charges were brought pursuant to NRS 212.165(4) and include aiding and abetting and conspiracy theories of liability.

Plunkett petitioned for a writ of habeas corpus, arguing that she could not be charged with or convicted of violating NRS 212.165(4) because the statute only criminalizes conduct by jail prisoners. She argued that NRS 212.165's statutory scheme evinces the Legislature's intent to punish those who furnish a phone to prisoners within a prison but not those who aid and abet a prisoner's possession of a cellphone in jail. The district court denied that petition. Plunkett subsequently moved to dismiss the charges against her, raising essentially the same arguments from the writ petition. The district court granted that motion, finding that "only a prisoner can be sentenced under [NRS 212.165(4)]. . . . [H]owever, [Plunkett] could be held liable under sections 1 or 2 of Nev. Rev. Stat. 212.165." This appeal by the State followed.

## DISCUSSION

The question before the court is whether Plunkett, a nonprisoner, can nonetheless be held liable for possession of a cellphone by a prisoner under an aider and abettor theory. In order to answer this question, we must address whether NRS 195.020 aider and abettor liability applies to NRS 212.165(4).

We review a district court's decision to grant a motion to dismiss an indictment for an abuse of discretion. *Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008). However, we review issues of statutory construction

de novo. *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009).

*Aider and abettor liability applies broadly*

We begin our analysis with Nevada's aider and abettor statute, NRS 195.020. It states:

> *Every person* concerned in the commission of a felony, gross misdemeanor or misdemeanor, whether the person directly commits the act constituting the offense, or *aids or abets* in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony, gross misdemeanor or misdemeanor is a principal and *shall be proceeded against and punished as such.* The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him or her.

NRS 195.020 (emphasis added). This court has interpreted NRS 195.020 to have expansive application across the criminal code. In *Randolph v. State*, we held that "pursuant to NRS 195.020, *anyone* who aids and abets in the commission of a crime is liable as a principal." 117 Nev. 970, 978, 36 P.3d 424, 429-30 (2001) (emphasis added); *cf. United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("[A]iding and abetting is embedded in every federal indictment for a substantive crime."). Indeed, it is a well-recognized maxim that "Nevada law does not distinguish between an aider or abettor to a crime and an actual perpetrator of a crime." *Sharma v. State*, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002). *"[B]oth are equally culpable." Id.* (emphasis added).

SUPREME COURT
OF
NEVADA

(O) 1947A

4

*Aider and abettor liability applies to NRS 212.165*

Plunkett does not appear to dispute the broad applicability of 195.020, but argues instead that it does not apply to NRS 212.165(4). NRS 212.165(4)[1] addresses the unlawful possession of portable telecommunication devices by prisoners in Nevada jails. It provides that "[a] prisoner confined in a jail . . . shall not, without lawful authorization, possess or have in his or her custody or control a portable telecommunications device." NRS 212.165(4). Subsection 4 does not mention aiding and abetting liability, nor does it expressly limit such liability in any way. Plunkett argues, however, that when read as a whole, NRS 212.165 indicates an intent by the Legislature to exempt 212.165(4) from aider and abettor liability. To decipher legislative intent, we look to the statute's plain language. *See Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983). If the language is clear and unambiguous, we do not look beyond it. *Id.*

The first three subsections of NRS 212.165 exclusively apply within an "institution or a facility of the Department of Corrections"—that is, a prison.[2] *See Sheriff v. Andrews*, 128 Nev. 544, 548, 286 P.3d 262, 264

---

[1]NRS 212.165 was amended in 2017, effective January 1, 2018. *See* 2017 Nev. Stat., ch. 538, § 3, at 3660-62. Plunkett's alleged crimes occurred in 2017. As the amendment did not change the language at issue in this matter, we reference the current version of the statute.

[2]We recognize that NRS 212.165(1)-(3) also encompasses "institution[s]" or "facilit[ies]" of the Department of Corrections, "or any other place where prisoners are authorized to be or are assigned by the Director of the Department." While we generally refer only to prisons throughout this opinion, the statute also prohibits these activities in these other locations as well. *See* NRS 212.165(9)(a)-(b).

(2012) (interpreting subsection 1 to apply to prisons and not jails).[3] Subsection 1 prohibits a person from *furnishing, attempting to furnish, or aiding or assisting in furnishing or attempting to furnish*, an unauthorized device to a prisoner confined in a prison. NRS 212.165(1). Subsection 2 prohibits a person from *carrying an unauthorized device into a prison*. NRS 212.165(2). Subsection 3, which criminalizes a *prisoner's* possession of a device in a *prison*, is the prison counterpart and mirror image of, subsection 4, which criminalizes the same behavior in *jail*. NRS 212.165(3), (4).

Plunkett argues that NRS 212.165 already contains an aiding and abetting provision that applies only in the prison context. *See* NRS 212.165(1). That is, subsection 1 of NRS 212.165 prohibits "[a] person" from furnishing a cellphone to a *prison* inmate, thus specifically providing for aiding and abetting liability, but there is no analogous subsection for those who furnish cellphones to *jail* inmates. Plunkett contends that this statutory construction evinces legislative intent to limit aider and abettor liability under the statute solely to the prison context.

We disagree with Plunkett's interpretation of NRS 212.165. Subsection 1 does not limit aider and abettor liability for the entirety of the statute. It simply captures and criminalizes different conduct. The prohibited acts of subsection 1—knowingly *furnishing*, assisting in furnishing, or attempting to furnish a portable communications device to a prisoner—are different than the prohibited acts outlined in subsections 3 and 4—a prisoner confined in a prison or a jail *possessing* a portable

---

[3]We note that the district court erroneously observed that Plunkett could be charged under NRS 212.165(1) or (2). This court's holding in *Andrews* demonstrates that subsection 1 applies exclusively to the prison context, 128 Nev. at 548, 286 P.3d at 264, and this logic extends equally to subsections 2 and 3. The relevant acts here occurred in the CCDC, a jail.

telecommunications device. *Compare* NRS 212.165(1), *with* NRS 212.165(3), *and* NRS 212.165(4). An example illuminates the difference: Imagine that a prisoner confined in a prison distracts a guard to aid another prisoner's possession of a cellphone. The prisoner providing the distraction is not furnishing or attempting to furnish the cellphone to the other prisoner and therefore has not committed an act prohibited by subsection 1. Although the prisoner providing the distraction does not have possession of the cellphone, he or she nevertheless could be punished for aiding the other prisoner's possession of the cellphone under subsection 3 based on Nevada's aiding and abetting statute.

Indeed, if Plunkett had furnished a cellphone to a prisoner confined in a prison, thereby also aiding in the prisoner's possession of the cellphone, charges may have been brought under either NRS 212.165(1)—a category E felony—or NRS 212.165(3) based on an aider and abettor theory of liability—a category D felony. Simply because a defendant's actions might subject them to liability under more than one statute does not evince legislative intent to limit the broad application of our aiding and abetting statute. *See Hernandez v. State*, 118 Nev. 513, 523, 50 P.3d 1100, 1107 (2002) (stating that "[t]he matter at issue here involves not conflicting statutes but prosecutorial discretion in charging" and that there is no constitutional problem with "the fact that the government prescribed different penalties in two separate statutes for the same conduct" (internal quotation omitted)).

Further, as to Plunkett's argument that she cannot be charged under NRS 212.165(4) because she is not a prisoner, aider and abettor liability applies even though NRS 212.165(4) establishes a status-based possessory crime. Courts have long held that a nonfelon can be criminally

liable for aiding and abetting a felon in possessing a firearm, *see, e.g.*, *United States v. Ford*, 821 F.3d 63, 70 (1st Cir. 2016), and this court has held that an individual can aid and abet another individual in unlawfully possessing a short-barreled shotgun, *Roland v. State*, 96 Nev. 300, 302, 608 P.2d 500, 501 (1980); *see also Franklin v. State*, 96 Nev. 417, 421, 610 P.2d 732, 735 (1980) (applying holding of *Roland*). By extension, even though Plunkett is not a prisoner confined in a jail, she can be criminally liable as a principal for a prisoner's possession of a cellphone by virtue of NRS 195.020.

In sum, Plunkett's argument that subsection 1 limits vicarious liability for the rest of NRS 212.165 fails once we recognize that subsection 1 merely captures and criminalizes different conduct from subsection 4. Rather, NRS 195.020's aider and abettor liability applies across the criminal code, including to NRS 212.165(4). We therefore hold that a person can be criminally liable as an aider or abettor under NRS 212.165(4).[4]

---

[4]Plunkett also raises an argument on constitutional grounds that she cannot be vicariously liable as a coconspirator under NRS 212.165(4). However, she does not develop this argument beyond a bare assertion. Moreover, this court has held that a coconspirator can be vicariously liable for general intent crimes. *Bolden v. State*, 121 Nev. 908, 923, 124 P.3d 191, 201 (2005), *receded from on other grounds by Cortinas v. State*, 124 Nev. 1013, 1026-27, 195 P.3d 315, 324 (2008). Plunkett has not presented us with argument to revisit this rule.

Accordingly, we reverse the district court's order granting Plunkett's motion to dismiss the indictment and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A